# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LEATHA WILLIAMS, as guardian of a minor, LAUREN WILLIAMS and ALICIA WILLIAMS, )<br>)<br>)<br>)<br>Plaintiff, )<br>) No. 3:05-cv-141<br>v. )<br>)<br>CAMPBELL COUNTY, TENNESSEE, ET AL. )<br>)<br>)<br>Defendants. ) | |

## AFFIDAVIT OF TONY AYERS

Tony Ayers, after being duly sworn according to law, deposes and says as follows:

1. My name is Tony Ayers. I am currently employed by the Scott County Ambulance Service. Previously, I was employed as a Corrections Officer by the Campbell County Sheriff's Department, and had been employed for approximately 5 years as of February, 2004. At material times, I worked the night shift, and I did not book the decedent, Ted Williams, into the jail.

2. I completed my TCI basic jail school training on March 3, 2000. I also completed 40 hours of annual in-service training required by TCI for each year I was employed at the Campbell County Sheriff's Department. As part of my training, I received instruction on how to evaluate inmates for suicidal propensities, through their verbal cues and non-verbal actions and behaviors, and respond appropriately. For example, self-mutilation, sudden changes in behavior or emotion, extreme agitation, refusal to eat or take medication, or an unusual change in hygiene

1

could be indicators of suicidal thoughts. For many such changes, it would of course be necessary to have some familiarity with the inmate. An inmate exhibiting these or any other indicators of suicide would be questioned about his or her intentions. If it is determined that the inmate poses a suicide risk, he is placed in a suicide smock, housed in a cell with nothing from which to tie or loop items on, and is checked regularly. The two holding cells and the "hospital" cell are the closest cells to the front desk of the Sheriff's Department.

    3. When I arrived for my shift shortly before 11:00 p.m., Williams had been placed into the "hospital" cell for his own safety, due to his status as a former law enforcement officer. The "hospital" cell is regularly used to segregate inmates from the general population. The "hospital" cell would never be used to segregate a suicidal inmate, because it is not appropriate for that purpose.

    4. I was on duty as a Corrections Officer at various times during Williams' incarceration. The decedent did not verbalize or show signs of suicidal intent during his incarceration that I saw or learned about until he was found hanging and deceased.

    5. I arrived for my normal shift at approximately 11:00 p.m. on February 19, 2004. At 4:00 a.m. I checked on Mr. Williams. He was lying on his bunk with his back to the door. I did not speak to him at this time.

    6. Security checks of the jail were conducted at 12:00, 1:30, 2:00, and 4:00. Everything appeared to be O.K. throughout the jail at those times. Additional "spot" security checks of specific portions of the jail may also have been conducted, but not recorded on the Jail Security Log. (Please see Jail Security Log attached hereto as Exhibit A)

    7. At approximately 4:40 a.m. Corrections Officer Nora "Cis" Robbins and I went to

remove inmate Phillip Pack from the drunk tank in order to fingerprint him. The drunk tank is located directly across the hall from the hospital cell where Williams was housed. In the process of doing so, Officer Robbins opened the viewing door to Williams' cell. Officer Robbins stated that she did not see him on the cot. We looked closer and could see his foot through the window. We opened the door by approximately 4:50 a.m. and found that Ted Williams hanged himself with an extension cord from the bar of the door.

    8. It was obvious from the discoloration of the decedent's face and body that the decedent was already dead. We then called for an ambulance and notified supervisors. Ambulance Service personnel determined that Williams was dead at the scene.

    9. Extension cords were common in the jail for use in powering fans, radios, and televisions for inmates not on suicide watch. Williams was allowed to keep a radio and extension cord that had been left in his cell by the prior occupant, as he exhibited no suicidal tendencies that I am aware of.

    10. If and to the extent plaintiffs contend that I conspired with others to intentionally kill Ted Williams, I did no such things, and have no information that Williams' death resulted from any cause other than his voluntary choice to hang himself.

    Further, affiant saith not.

_____
Tony Ayers

3

Case 3:05-cv-00141    Document 10-2    Filed 07/21/06    Page 3 of 4    PageID #: 5

**STATE OF TENNESSEE** )
                                   )
**COUNTY OF** _____ )

       Personally appeared before me Tony Ayers, with whom I am personally acquainted, and who acknowledged that she executed the within instrument for the purposes therein contained.

       Witnessed my hand, at office, this the \_\_\_\_ day of _____, 2006.


                                                                 _____
                                                                 Notary Public

My Commission Expires:_____