# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LEATHA WILLIAMS, as guardian of ) | |
| a minor, LAUREN WILLIAMS and ) | |
| ALICIA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:05-cv-141 |
| v. ) | |
| ) | |
| CAMPBELL COUNTY, TENNESSEE, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF NORA "CIS" ROBBINS

Nora Robbins, after being duly sworn according to law, deposes and says as follows:

1. My name is Nora "Cis" Robbins. I have been employed as a Corrections Officer at the Campbell County Sheriff's Department for approximately 11 years. I had been employed for approximately 9 years as of February 2004. At material times, I worked the night shift, and I did not book the decedent, Ted Williams, into the jail.

2. I completed my TCI basic jail school training on June 24, 1997. I have also completed the TCI required 40 hours of annual in-service training for each year I have been employed at the Campbell County Sheriff's Department. As part of my training, I have received instruction on how to evaluate inmates for suicidal propensities, through their verbal cues and non-verbal actions and behaviors, and respond appropriately. For example, self-mutilation, sudden changes in behavior or emotion, extreme agitation, refusal to eat or take medication, or an unusual change in hygiene could all be signs of suicidal thoughts. An inmate exhibiting these

1

or any other indicators of suicide would be questioned about his or her intentions, and appropriate precautions taken. Williams was not on suicide watch.

    3. When I arrived for work on the night shift, Williams had been placed into the "hospital" cell for his own safety, due to his status as a former law enforcement officer. The "hospital" cell is regularly used to segregate inmates from the general population. The "hospital" cell would never be used to segregate a suicidal inmate, because it is not appropriate for that purpose.

    4. I was on duty as a Corrections Officer at various times during the decedent's incarceration. The decedent never verbalized or showed signs of suicidal intent at any time in my presence, nor did anyone relate such information to me.

    5. I arrived for work at approximately 11:00 p.m. on February 19, 2004. At approximately 11:15 p.m. I opened the viewing door to Williams' cell and asked him how he was doing. He was lying on his back, and turned and said he was O.K.

    6. Security checks of the jail were conducted at 12:00, 1:30, 2:00, and 4:00. Everything appeared to be O.K. throughout the jail at those times. Additional "spot" security checks of specific portions of the jail may also have been conducted, but not recorded on the Jail Security Log. (See Campbell County Jail Security Log attached to Affidavit of Tony Ayers as Exhibit A).

    7. At approximately 4:40 a.m. Tony Ayers and I went to remove Phillip Pack from the drunk tank. The drunk tank was directly across the hall from the decedent's cell. In the process of removing Inmate Pack I opened the viewing door to the decedent's cell to check on him. I found that he was not on his bunk, and saw his foot near the doorway. We opened the door and

2

found that the decedent hanged himself.

8. It was obvious from the discoloration of the decedent's face and body that the decedent was already dead. However, we called for an ambulance and notified supervisors. Ambulance Service personnel determined that Williams was dead at the scene.

9. Extension cords are very common in the jail for use in powering TV's, radios, fans, and other items for inmates not on suicide watch. Williams was allowed to retain a radio and extension cord that had been left in his cell by the former occupant, as he exhibited no suicidal tendencies that I was aware of.

10. If and to the extent plaintiffs contend that I conspired with others to intentionally kill Ted Williams, I did no such things, and have no information that Williams' death resulted from any cause other than his voluntary choice to hang himself.

Further, affiant saith not.

_____
Nora "Cis" Robbins

**STATE OF TENNESSEE** )
                       )
**COUNTY OF _____** )

Personally appeared before me Nora "Cis" Robbins, with whom I am personally acquainted, and who acknowledged that she executed the within instrument for the purposes therein contained.

Witnessed my hand, at office, this the ____ day of _____, 2006.

_____
Notary Public

My Commission Expires:_____

3